BOARD OF EDUCATION OF THE CITY OF DETROIT
*v.*
SUPERINTENDENT OF PUBLIC INSTRUCTION.

1. Constitutional Law—Legislature—Appropriation for School Districts.

   While it may be presumed that the legislature will obey the mandate of the Constitution to make an appropriation of at least a stated minimum amount for school districts, it is not within the power or province of the Court to order the legislature to do so (Const. 1908, art. 10, § 23, as added in 1946).

2. Same—Grants to School Districts—"Preceding Year."

   In applying provision of amendment to Constitution requiring legislature to "make annual grants to school districts out of general funds * * * in at least amounts which bear the same ratio to total State sales tax revenues of the preceding year which the legislative grants in the fiscal year 1945–1946 bore to said revenues of the preceding year" in making appropriation for fiscal year ending June 30, 1948, use of the year ending June 30, 1946 was not in violation of the Constitution where enactment of legislation at the regular session of 1947 was before the revenues for the year ending June 30, 1947 could be ascertained and it is a matter of common knowledge that few regular sessions are not completed before June 30th of year held and amendment requires legislature to act upon a definite basis rather than by estimates (Const. 1908, art. 10, § 23, as added in 1946; Act No. 331, § 1, Pub. Acts 1947).

3. Same—Construction.

   Constitutional provisions are to be construed in the light of the purpose sought to be accomplished thereby, and in such manner as to reasonably accomplish such purpose.

4. Same—Rules of Construction.

   In construing provisions of a Constitution, resort may be had to the same general principles that are applicable in the interpretation of statutes.

5. SAME—PURPOSE OF AMENDMENT—FINANCIAL ASSISTANCE TO LO-
CAL GOVERNMENTAL UNITS AND SCHOOL DISTRICTS.

   Amendment of Constitution returning one cent of the sales tax
   levy to local governmental units and school districts was de-
   signed to render financial assistance thereto (Const. 1908,
   art. 10, § 23, as added in 1946).

6. SAME—CONSTRUCTION—STATE SCHOOL DISTRICT.

   Provision of amendment of Constitution specifically referring to
   school districts must be construed in the light of the general
   purpose of the amendment to render financial assistance to
   local governmental units and school districts, hence designa-
   tion of the State itself as a school district for the maintenance
   of different State institutions, or the performance of func-
   tions assumed directly by the State government was not
   within the scope or purpose sought to be accomplished, espe-
   cially in view of the fact that prior appropriations for such
   purposes were not regarded as grants to school districts
   (Const. 1908, art. 10, § 23, as added in 1946).

7. SAME—CONSTRUCTION OF AMENDMENT—SCHOOL DISTRICT.

   In adopting an amendment of the Constitution, it may be as-
   sumed the people of the State gave to the term ''school dis-
   trict'' the common significance attaching to it (Const. 1908,
   art. 10, § 23, as added in 1946).

8. SCHOOLS AND SCHOOL DISTRICTS—DEFINITIONS.

   The term ''school district'' is commonly regarded as a legal
   division of territory, created by the State for educational
   purposes, to which the State has granted such powers as are
   deemed necessary to permit the district to function as a
   State agency.

9. SAME—STATE SCHOOL DISTRICT—CONSTITUTIONAL LAW.

   State school district which was not vested with powers and du-
   ties commonly delegated to school districts but was created
   for the purpose of receiving, administering and disbursing
   certain appropriations and which, as such, exercised no pre-
   rogatives *held*, not a ''school district'' within the meaning of
   the term as used in amendment of Constitution designed to
   render financial assistance to local governmental units and
   school districts (Const. 1908, art. 10, § 23, as added in 1946;
   Act No. 331, § 60, Pub. Acts 1947).

10. STATES—APPROPRIATIONS FOR STATE INSTITUTIONS AND PURPOSES
    —FINANCIAL AID TO LOCAL GOVERNMENTAL UNITS AND SCHOOL
    DISTRICTS.

    The power of the legislature to make appropriations for the
    support and maintenance of schools for the blind and deaf,
    for vocational education and for the benefit of retirement

funds for school employees is not open to question because
of an amendment to the Constitution designed to render fi-
nancial assistance to local governmental units and school dis-
tricts (Const. 1908, art. 10, § 23, as added in 1946; art. 11,
§ 15).

11. SAME—APPROPRIATIONS FOR STATE INSTITUTIONS AND PURPOSES
—STATE SCHOOL DISTRICT.

Appropriations for the schools for the blind and deaf, for vo-
cational education and for school employees' retirement funds
were not void merely because State school district which was
created for purpose of receiving, administering and disbursing
funds for such institutions and purposes as specified bene-
ficiaries was not valid (Const. 1908, art. 10, as added in 1946;
Act No. 331, §§ 23, 28, 29, 60, Pub. Acts 1947).

12. STATUTES—CONSTRUCTION—INTENT.

In interpreting a statute its various provisions must be read
together to the end that the legislative intent may be prop-
erly determined.

13. STATES—APPROPRIATIONS—SCHOOLS AND SCHOOL DISTRICTS—
STATE SCHOOL DISTRICT.

Under statute making an appropriation from the general fund
of the State to school districts to be distributed in accordance
with the act, holding provisions valid appropriating a speci-
fied portion therefrom to an invalid State school district for
the specified beneficiaries therein designated did not operate
to divert appropriations therein made for local school districts
nor would invalidation of such smaller portion inure to the
benefit of the local school districts (Const. 1908, art. 10, § 23,
as added in 1946; Act No. 331, §§ 1, 23, 28, 29, 60, 61, Pub.
Acts 1947).

14. SAME—BOARD OF EDUCATION—POWERS.

The legislature may vest the State board of education with
powers and duties relating to educational matters not affect-
ing the State normal college or schools (Const. 1908, art. 11,
§ 6).

15. SAME—GENERAL FUND.

Payments from the general fund of the State cannot be made
except in accordance with legislative action (Const. 1908,
art. 10, § 16).

16. SAME — GENERAL FUND — APPROPRIATIONS — VALIDITY — CONDI-
TIONS.

Appropriations made by the legislature from the general fund
for rather vital governmental functions and pursuant to man-
dates of the Constitution are valid when they can be char-

acterized as not conditional upon an unconstitutional means for their receipt, administration and disbursal (Const. 1908, art. 10, § 23, as added in 1946; art. 11, §§ 6, 15; Act No. 331, §§ 1, 23, 28, 29, 60, 61, Pub. Acts 1947).

17. SAME—APPROPRIATIONS—LEGISLATURE—COURTS—DEFICIENCY.

Notwithstanding the legislature failed to make appropriation of minimum amount for school districts as prescribed by Constitution in mandatory formula, the court may not direct or control its action and require it to make up the deficiency (Const. 1908, art. 10, § 23, as added in 1946).

18. ACTION—DECLARATION OF RIGHTS—INJUNCTION—CONSTRUCTION OF STATUTES—APPROPRIATIONS FOR PUBLIC PURPOSES.

While injunctive or consequential relief to compel action by the legislature may not be granted by the court, where case involves the validity and interpretation of provisions of an act of the legislature, the status of appropriations for the benefit of State institutions and other public purposes and the determination of the proper basis to be used for legislative grants for school districts under mandatory formula prescribed by Constitution, a declaration of rights is within the purview of statute as to declaratory judgments and decrees (Const. 1908, art. 10, § 23, as added in 1946; 3 Comp. Laws 1929, § 13903 *et seq.*; Act No. 331, Pub. Acts 1947).

19. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES—APPROPRIATIONS FOR PUBLIC PURPOSES.

No costs are allowed in suit for declaration of rights in case involving interpretation of statute making appropriations for State institutions and other public purposes, a public question being involved (Const. 1908, art. 10, § 23, as added in 1946; Act No. 331, § 1, Pub. Acts 1947).

Appeal from Ingham; Coash (Louis E.), J. Submitted October 16, 1947. (Docket No. 69, Calendar No. 43,862.) Decided December 3, 1947.

Bill by Board of Education of the City of Detroit against Eugene B. Elliott, Superintendent of Public Instruction, and others for decree declaring Act No. 331, Pub. Acts 1947 unconstitutional and void. Board of Education of the City of Grand Rapids and others intervened. Bill dismissed. Plaintiff and intervening plaintiffs appeal. Modified and affirmed.

*Clarence E. Page* (*William E. Dowling,* of counsel), for plaintiff Board of Education of the City of Detroit.

Intervening plaintiffs:

*F. Roland Allaben,* for Board of Education of the City of Grand Rapids.

*Kleinstiver & Anderson,* for Union School District of Jackson.

*Crawford S. Reilley,* for Board of Education of Highland Park.

*Guy Selby,* for School District of the City of Flint.

*Lou L. Landman,* for Public Schools of the City of Muskegon.

*Braun & Kendrick,* for School District of the City of Saginaw.

*Davidson, Beauchamp & Theut,* for Detroit Teachers' Association.

*Edward N. Barnard,* for Michigan Federation of Teachers.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons* and *Caroline W. Thrun,* Assistants Attorney General, for defendants.

CARR, C. J. This case involves the constitutionality and interpretation of certain provisions of Act No. 331, Pub. Acts 1947, by which the legislature made appropriations for specified educational purposes. The general object of the act is indicated by its title, which reads as follows:

"An act to make appropriations from the general fund of the State for the purpose of aiding in the support of the public schools of the State; and for the purpose of reimbursing counties for salaries of county commissioners of schools or county superintendents of schools; to provide for the apportion-

ing of the same annually to the school districts and to the county treasurers of the State; to provide for the creation of a State school district to receive, administer and disburse appropriations to the Michigan and Detroit public school employees' retirement funds and to the State board of education for the Michigan school for the deaf and the Michigan school for the blind; to provide certain limitations and regulations in connection therewith; to declare the effect thereof; to provide penalties for the violation thereof; and to repeal all acts and parts of acts inconsistent with the provisions of this act.''

In accordance with the title, chapter 1, § 1 of the act appropriates for the fiscal year ending June 30, 1948, the sum of ''$51,705,633.05 from the general fund of the State to school districts to be distributed in accordance with this act.'' Said section further recites that the amount so appropriated is 44.77 per cent. of the State sales tax revenues of the preceding year, and that the appropriation is made in accordance with the provisions of article 10, § 23, of the State Constitution.

Act No. 331, chap. 3, § 60, provides:

''For the purposes of this act the State shall constitute a single school district. The superintendent of public instruction shall be the executive officer of such State school district, and the State board of education, the State board of control for vocational education, the Michigan public school employees' retirement fund board and the retirement commission created under chapter 2 of Act No. 136 of the Public Acts of 1945, shall be the administrative boards of such district. Said State school district shall not supersede, affect or limit any of the powers, constitutional or statutory, in force when this act takes effect belonging to the superintendent of public instruction or any board listed hereunder, nor shall it supersede, replace or limit the statutory

powers of school districts organized and operating under other statutes.''

In directing the distribution of the money appropriated by the act, as contemplated by chapter 1, § 1, above mentioned, the legislature in chapter 2, § 23, appropriated $600,000 to the State school district for vocational education, and directed such appropriation to be administered by the State board of control for vocational education in the manner provided by prior statutes of the State. Likewise, in chapter 2, § 28, there was appropriated to said State school district for the Michigan school for the blind the sum of $278,350, and for the Michigan school for the deaf the further sum of $457,910, said amounts to be administered and disbursed by the State board of education. The following section then appropriated to the State school district the sum of $5,500,000 to be administered and disbursed by the public school employees' retirement fund board, and by the retirement commission created under Act No. 136, Chap. 2, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 7763–132 *et seq.*, Stat. Ann. 1946 Cum. Supp. § 15.893 [41] *et seq.*), said amount to be pro-rated to the two funds indicated on the basis of contributions made thereto by members. Chapter 3, § 61, makes further provision for the disbursement of each of the specified amounts so appropriated, and defines the duties of each board and commission specified as a disbursing agency.

Article 10, § 23, of the State Constitution (1908) referred to in the first section of the act under consideration, was adopted by a vote of the people at the general election held November 5, 1946. It reads as follows:

''There shall be returned to local governmental units and school districts by the method hereinafter

set forth, one cent of a State sales tax levy on each dollar of sales of tangible personal property on the present statutory base (not rate). The State tax collecting authority shall divide the entire said sum without deduction and remit fifty per cent thereof among the school districts on the basis of the school census on which primary school money is distributed for that fiscal year. The balance of fifty per cent shall be returned to counties as a whole on a population basis and payment shall be made to the county treasurer who shall remit to the respective cities, townships and villages within the county on a per capita basis. Population computation shall be based on the last State-wide Federal census for purposes of division among counties and upon the same basis or upon any special Federal county-wide census, whichever is later, for intra-county division purposes. All remittances provided shall be made on a quarterly basis. The legislature shall hereafter make annual grants to school districts out of general funds, over and above all constitutional allocations heretofore and herein provided, in at least amounts which bear the same ratio to total State sales tax revenues of the preceding year which the legislative grants in the fiscal year 1945–1946 bore to said revenues of the preceding year."

The interpretation of the amendment was before this Court in *City of Jackson* v. *Commissioner of Revenue,* 316 Mich. 694. It was there held that the provisions with reference to the return to local governmental units and school districts of one cent of the total sales tax collected were mandatory and self-executing, but that the final requirement with reference to annual grants to school districts out of general funds was not self-executing but rather contemplated legislative action which may not be enforced by mandamus. Recognizing that the provision with reference to the minimum grants to school districts was mandatory it was said p. 719:

"Presumably, the legislature will obey the mandate, but it is not within the power or the province of the court to order the legislature to do so. It is also significant that the concluding sentence provides a minimum annual appropriation or grant to be made by the legislature, but leaves it to the discretion of the legislature whether it will make an appropriation in excess of the minimum amount. But it cannot lessen the amount set up by the formula in the concluding sentence of the amendment."

The plaintiff, board of education of the city of Detroit, filed suit in the circuit court of Ingham county, asking for a declaration of rights * and for injunctive relief against the defendants, the superintendent of public instruction, the State treasurer, and the auditor general. Thereafter, other school districts of the State and teachers' associations sought and obtained leave to intervene as parties plaintiff, all intervenors adopting the bill of complaint filed by the original plaintiff. It was alleged therein, in substance, that the total amount of the appropriations made by Act No. 331 was less than required by article 10, § 23, of the Constitution, that it was not within the power of the legislature to create a State-wide school district, that the specific appropriations attempted to be made to said school district for vocational training, the school for the blind, the school for the deaf, and the school employees' retirement funds, were wholly ineffective and void, that the total amount appropriated by the act should be distributed to school districts of the State, to the exclusion of the State school district, and that plaintiffs were entitled to a declaration of rights in accordance with their claims and to injunctive relief to prevent the disbursement of any

---

* See 3 Comp. Laws 1929, § 13903 et seq. (Stat. Ann. § 27.501 et seq.).

portion of the specific appropriations claimed to be invalid. On behalf of defendants a motion to dismiss was filed and also an answer putting in issue the material questions raised by the bill of complaint. Following trial in the circuit court the relief sought was denied and a decree entered dismissing the bill of complaint. From such decree plaintiffs have appealed.

The first question requiring consideration has reference to the basis on which the legislative appropriations were made. The ratio between the total State sales tax revenues for the fiscal year ending June 30, 1945, and the legislative grants made for the fiscal year 1945–1946, was determined by the legislature in the manner required by the specific language of the constitutional amendment above quoted. The correctness of the resulting percentage as specified in chapter 1, § 1, of the act, is not questioned. In determining the aggregate amount to be appropriated such percentage was applied by the legislature to the total sales tax revenues for the fiscal year ending June 30, 1946. Plaintiffs claim this method was incorrect and that the percentage should have been applied to the total sales tax revenues for the year ending June 30, 1947. It is argued, in substance, that the reference to "preceding year" in the concluding provision of article 10, § 23, of the Constitution, must be construed as having reference to the year immediately preceding that for which the grants are made, and that, in consequence, the appropriations to school districts made by Act No. 331, for the fiscal year ending June 30, 1948, should have been based on the revenues received by the State from the sales tax during the fiscal year 1946–1947. It is conceded that the term in question has reference to the fiscal year of the State.

It is the position of defendants that the action of the legislature in proceeding on the basis indicated was proper and not in conflict with the provision of the Constitution above quoted. Attention is called to the fact that Act No. 331 was passed prior to June 30, 1947, that at that time the legislature had no way of determining the total amount of the sales tax revenues received and to be received by the State during the then current fiscal year and that the legislature could not comply with the mandate of the Constitution except by construing the words "preceding year" as having reference to the fiscal year ending June 30, 1946.

It must be presumed that in adopting the amendment to the Constitution in question the people had in mind the requirement (Const. 1908, art. 5, § 13) that the legislature shall meet in regular session on the first Wednesday in January of each odd year. It is a matter of common knowledge that there have been comparatively few regular legislative sessions since the adoption of the present State Constitution that were not completed prior to June 30th of the years in which the sessions were held. The language of the amendment with reference to grants to school districts clearly imports that the legislature shall make such grants on a definite basis, necessitating complete and accurate information with reference to the revenues on which the annual appropriations are based. If the construction contended for by plaintiffs is correct, the legislature may not fully comply with the mandate given it by the people except by withholding the making of the appropriations each year until such time, subsequent to July 1st, as the sales tax revenue figures for the past fiscal year become available. One result of such construction would be that each fiscal year would be well under way prior to the making

of the appropriations for such year. We do not think that such was the intention of the people in the adoption of the amendment. They did not empower the legislature to proceed on the basis of estimates of revenue to be received. On the contrary the language used is scarcely consistent with any theory except that appropriations of specific amounts on a prescribed basis were in contemplation. While the language used is not free from ambiguity, we have no doubt that it was intended to be given a practical construction, in accordance with established methods of legislative functioning. Under well-established principles, constitutional provisions are to be construed in the light of the purpose sought to be accomplished thereby, and in such manner as to reasonably accomplish such purpose. *School District of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338; *Civil Service Comm.* v. *Auditor General,* 302 Mich. 673. Resort may be had to the same general principles that are applicable in the interpretation of statutes. See *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A. L. R. 827); 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490.

The conclusion of the legislature that it should base its appropriations to school districts for the fiscal year 1947–1948 on the sales tax revenues for the year ending June 30, 1946, is not at variance with the language of article 10, § 23, of the Constitution, or with the purpose underlying the submission and adoption of that amendment. It does not bring about any unfair or inequitable result. It may be reasonably anticipated that over a period of years, the aggregate of grants made will be approximately the same under the legislative interpretation of the mandate of the Constitution as it would be under that proposed by the plaintiffs. It may be noted also that the basis accepted by the

legislature, and contended for on behalf of defendants in this case, has the advantage of permitting boards of education throughout the State to know in advance the approximate amount of the grants that may be anticipated for the next ensuing year. We determine that the action of the legislature in the enactment of Act No. 331, Pub. Acts 1947, in accepting as the basis for the grants to be made to school districts the sales tax revenues for the fiscal year ending June 30, 1946, was not in violation of article 10, § 23, of the Constitution.

This brings us to a consideration of the claims of plaintiffs with reference to the status of the State school district contemplated by the act, and the appropriations made thereto for the use and benefit of vocational education, the school for the blind, the school for the deaf, and the school employees' retirement funds. It is contended that it is not within the power of the legislature to create a school district embracing the entire State. Defendants advance the argument that in practical effect the State has been in the past a school district, as such has maintained various educational institutions, and has participated directly in the advancement of the general program of education. Attention is called to the fact that township and county school districts have been created for specified educational purposes and that the power of the legislature with reference to school districts in general has been uniformly regarded as 'embracing the power to create and alter them, regulate the powers and duties of boards of education, provide for the management of the affairs of such districts, direct and control the. system of education of the State, and, in general, exercise with reference thereto the authority of a sovereign State over its governmental agencies. Conceding such measure of authority,

however, the conclusion does not follow that the entire State can be declared a school district within the meaning of that term as used in article 10, § 23, of the Constitution. The purpose of that amendment is not in dispute. It was intended to assist local governmental units and school districts in the manner therein set forth. The provision here directly involved with reference to future grants to school districts must be construed in the light of the general purpose of the amendment. The maintenance of different State institutions, or the performance of functions assumed directly by the State government, was not within the scope or purpose sought to be accomplished. Prior appropriations for such purposes were not regarded as grants to school districts, and they cannot now be made of such character by designating the State itself as a school district.

It may be assumed that in the adoption of the amendment to the Constitution the people of the State gave to the term "school district" the common significance attaching to it. In *Board of Metropolitan Police of the City of Detroit* v. *Board of Auditors of Wayne County,* 68 Mich. 576, 579, it was said:

"Our State Constitution has provided for local municipalities, embracing counties, cities, villages, townships, and school districts, which it has been held mean such bodies of those names as were of a nature familiar and understood."

The school district is commonly regarded as a State agency. *Attorney General, ex rel. Kies,* v. *Lowrey,* 131 Mich. 639; *Attorney General, ex rel. McRae,* v. *Thompson,* 168 Mich. 511. Such concept is scarcely consistent with the idea of the State making itself a school district and treating such dis-

trict as an agency of the State for the purpose involved in the instant case. Webster's New International Dictionary (2d Ed.), defines the term "district" as:

"A division of territory; a defined portion of a state, county, country, town, or city, etc., made for administrative, electoral, or other purposes; as, a Congressional, federal, judicial, land, militia, magisterial, or school *district*."

Other dictionaries contain similar definitions, thereby indicating the common understanding of the word. It is, generally speaking, something less than the whole. We think it may fairly be said that the term "school district" is commonly regarded as a legal division of territory, created by the State for educational purposes, to which the State has granted such powers as are deemed necessary to permit the district to function as a State agency. *Stuart* v. *School District No. 1 of the Village of Kalamazoo*, 30 Mich. 69; *Daniels* v. *Board of Education of the City of Grand Rapids*, 191 Mich. 339 (L. R. A. 1916 F, 468); *MacQueen* v. *City Commission of Port Huron*, 194 Mich. 328; *Public Schools of the City of Battle Creek* v. *Kennedy*, 245 Mich. 585.

It should be noted also that under Act No. 331 the State school district is not vested with powers and duties of the character commonly delegated to school districts. It is declared a school district for one purpose only, namely, as indicated in the title of the act, "to receive, administer and disburse" certain appropriations. Under chapter 3, § 61, specific authority with reference thereto is vested in existing boards and commissions. In other words, the State school district as such exercises no prerogatives. Actually, the appropriations in dispute

were not made to the State school district but rather to the specified beneficiaries designated. In view of the sharply-defined issues in the case at bar, it is unnecessary to consider further the general control of the legislature over the subject of education, or its right to provide for the creating of school districts and for the management and functions thereof in connection with the educational system of the State. We hold that the State school district sought to be created by this act is not a "school district" within the meaning of the term as used in article 10, § 23, of the Constitution.

The conclusion does not follow from the foregoing that the appropriations challenged by plaintiffs are void. It must be borne in mind that we are not dealing in this case with funds appropriated by the Constitution itself. Rather the matters at issue concern appropriations made by the legislature out of the general fund of the State. The power of the legislature to make appropriations for the support and maintenance of the school for the blind and the school for the deaf is not open to question. In fact, the State Constitution (1908), article 11, § 15, specifically directs that, "Institutions for the benefit of those inhabitants who are deaf, dumb, blind, feebleminded or insane shall always be fostered and supported." Likewise, the making of appropriations for vocational education and for the benefit of the retirement funds for school employees is clearly within the scope of the legislative power. As before noted, these appropriations were not made for the support and maintenance of the State school district but rather to the end that the specified beneficiaries named might continue to function. As counsel for defendants say in their brief, "the appropriations are in fact appropriations for the beneficiaries named therein just as much as if they

had been made in separate bills of appropriation."

Sustaining the appropriations as made, for the use and benefit of the beneficiaries designated, does not mean that money appropriated for the support of the plaintiffs and other school districts of the State pursuant to article 10, § 23, of the Constitution, is diverted. The aggregate amount referred to in chapter 1, § 1, of Act No. 331, was expressly required "to be distributed in accordance with this act." In interpreting the statute its various provisions must be read together to the end that the legislative intent may be properly determined. When so read it is obvious that of the total amount mentioned in chapter 1, § 1, a total of $6,836,260 was intended to be disbursed for the school for the blind, the school for the deaf, the board of control for vocational education, the Michigan public school employees' retirement fund board, and the retirement commission having jurisdiction with reference to employees in school districts of the first class. The provisions of section 61 of the act leave no question in this regard.

Plaintiffs call attention to the provisions of article 11, § 6, of the State Constitution, with reference to the powers of the State board of education. It is therein provided:

"The State board of education shall have general supervision of the State normal college and the State normal schools, and the duties of said board shall be prescribed by law."

It is argued that under the language quoted it is not within the power of the legislature to prescribe powers and duties for the State board of education, except in connection with the State normal college and the State normal schools. Such claim is not tenable. It will be noted that the provision above

quoted specifically directs that "the duties of said board shall be prescribed by law." There is nothing in said section suggesting that the duties to be prescribed must have reference to the institutions mentioned. Many statutes have heretofore been enacted by the legislature investing the board with powers and duties relating to educational matters but not affecting the State normal college or the State normal schools. The validity of such measures is not open to question on the theory that the Constitution has limited the functions of the board in the manner claimed by plaintiffs.

If the appropriations here challenged were held invalid for the reasons urged by plaintiffs, school districts entitled to grants in accordance with article 10, § 23, of the Constitution, could not claim the right to have the aggregate of such appropriations turned over to them. As before noted, we are concerned here with appropriations made out of the general fund of the State. Payments from such fund cannot be made except in accordance with legislative action. The Constitution (1908), article 10, § 16, provides:

"No money shall be paid out of the State treasury except in pursuance of appropriations made by law."

The invalidity of the appropriations for other beneficiaries under the act could not, therefore, inure to the benefit of plaintiffs.

As pointed out by defendants, holding invalid the appropriations in question would result in serious consequences to vital State institutions and essential activities. In the final analysis such conclusion would necessarily rest on the premise that the legislature conditioned the appropriations for these purposes on the validity of its attempted action with

reference to the State school district. It may not be assumed, however, that the legislature intended the appropriations to fail in the event of a judicial determination that the State was not created into a single school district within the meaning of the term as used in article 10, § 23, of the Constitution. As before suggested, the appropriations were essential to the performance of rather vital governmental functions, and those for the benefit of the school for the deaf and the school for the blind were made pursuant to the mandate of the Constitution itself. The legislature recognized its obligation to make appropriations for the purposes in question and they cannot be regarded as conditional in character. *State Board of Agriculture* v. *Auditor General,* 226 Mich. 417. Such appropriations are valid.

The practical situation presented is that the legislature, by Act No. 331, Pub. Acts 1947, did not appropriate to school districts of the State entitled to annual grants under the concluding provision of article 10, § 23, of the Constitution, for the fiscal year ending June 30, 1948, the full amount required by said provision. The amount of the deficiency is the sum of $6,836,260, the aggregate of the appropriations challenged by plaintiffs. Actually the legislature appropriated to said school districts the sum of $44,869,373.05. It did not, in other words, comply with the mandatory formula hereinbefore discussed, such failure obviously occurring because of the mistaken belief that the appropriations for the four specific purposes above discussed could be lawfully included as a part of the appropriations to school districts. However, as pointed out in *City of Jackson* v. *Commissioner of Revenue, supra,* the court may not direct or control legislative action. In consequence, whether the deficiency is made up by a further appropriation rests wholly with the legislature.

For the reasons pointed out, plaintiffs are not entitled to injunctive relief against the defendants, or any of them. In view of the questions at issue, however, we think that a decree may properly enter declaring the rights of the parties in accordance with this opinion, even though no consequential relief may be granted by the court. As indicating the interpretation and scope of the statute, hereinbefore cited, providing for declaratory judgments and decrees in certain cases, we call attention to *City of Muskegon Heights* v. *Danigelis,* 253 Mich. 260 (73 A. L. R. 696); *Lawrence* v. *American Surety Company of New York,* 263 Mich. 586 (88 A. L. R. 535); *Evans Products Co.* v. *State Board of Escheats,* 307 Mich. 506. The case at bar involves the validity and interpretation of provisions of an act of the legislature, the status of appropriations for the benefit of State institutions and other public purposes, and the determination of the proper basis to be used for legislative grants under the final provision of article 10, § 23, of the State Constitution. A declaration of rights as to said matters is within the purview of the statute.

To summarize briefly, we hold:

First, that the legislature, in making grants to school districts under the provisions of article 10, § 23, of the State Constitution, for the fiscal year 1947–1948, properly applied the percentage ascertained in the manner required by said section, to the total sales tax revenues received by the State during the fiscal year ending June 30, 1946;

Second, that the so-called State school district, sought to be provided for in said act, is not a "school district" within the meaning of the said section of the Constitution;

Third, that the appropriations made in said act for the use and benefit of the board of vocational control, the State school for the blind, the State

school for the deaf, the public school employees' retirement fund board, and the retirement commission having authority with reference to employees of school districts of the first class, are valid appropriations for said institutions and purposes;

Fourth, that the legislature in said act failed to appropriate to the school districts of the State, for the fiscal year ending June 30, 1948, the full amount required by article 10, § 23, of the Constitution, the amount of such deficiency being the sum of $6,836,260;

Fifth, that the court is without power to direct or control legislative action with reference to a possible further appropriation to cover the amount of such deficiency;

Sixth, that plaintiffs are not entitled to injunctive relief, but a declaration of rights in accordance with the conclusions herein set forth may properly be made.

A decree will enter in this Court in accordance herewith, without costs.

BUTZEL, BUSHNELL, SHARPE, REID, and DETHMERS, JJ., concurred with CARR, C. J.

NORTH, J. (*dissenting in part*). I an unable to concur in full with the opinion of Chief Justice CARR. Fundamentally I am of a different mind because I cannot agree with his conclusion: "We hold that the State school district sought to be created by this act (Act No. 331, Pub. Acts 1947) is not a 'school district' within the meaning of the term as used in article 10, § 23 of the Constitution (the 1946 constitutional amendment)."

I find no difficulty in concluding that the legislature has the right to create State agencies which have the power to function state-wide. This has

been done in instances too numerous to mention, for example, the State highway department, the State tax commission, et cetera. Nor is that conclusion disturbed by the fact that in the instant case the State agency is designated as a "State school district," merely because the territorial extent of our school agencies have been and are commonly designated as districts. "District" (notwithstanding dictionary definitions, which should not be too rigidly followed in matters of this kind) is not always "a division of territory." For example, there is no division of territory in the *District* of Columbia except in the general sense that it is territorially a part of the United States the same as each of the various states of the Union. The district represented by our representatives-at-large in Congress consists of the entire State of Michigan. Further, the dictionary definition quoted in the opinion of the Chief Justice falls far short of specifically denoting that a "school district" may not be Statewide. There seems to be no good reason why the creating power may not define the area in which its agency operates as coextensive with that of the creating power.

I cannot conclude that in adopting the pertinent constitutional provision, the people were motivated by an assumption that the legislature did not have the power, if it saw fit, to thereafter revamp the school districts of the State if in its wisdom it seemed best for carrying on most efficiently for the State as a whole its educational undertakings. And I do not find in our Constitution any such limitation on the power of the legislature. It follows that the right to alter the existing school districts or to create new districts within the State is vested in the legislative branch of the State government; and that power was not restricted or otherwise altered

by the adoption of the 1946 constitutional amendment.

In the opinion of the Chief Justice it is said: "It should be noted, also, that under Act No. 331 (Pub. Acts 1947) the State school district is not vested with the powers and duties of the character *commonly delegated to school districts.*" Even so, clearly the provisions in the cited act for "a State school district" pertain to the over-all educational activity of the State and to a phase of State education urgently demanded by public welfare. The Constitution provides that institutions for the benefit of the deaf, dumb and blind "shall always be fostered and supported." See Michigan Constitution 1908, art. 11, § 15. The fact that the manner provided in the statute for carrying on the activities of the State school district may be somewhat of a departure from that heretofore "commonly delegated to school districts," is not persuasive of invalidity. The function of good government cannot be fully accomplished except progressive provisions are made for varying needs as they arise.

For the reasons above indicated I am constrained to disagree with the portion of the Chief Justice's opinion under consideration, and to hold that the so-called State school district created by Act No. 331, Pub. Acts 1947 is a legally-constituted school district. Having so concluded I cannot agree that the legislature failed to appropriate to the school districts of the State for the fiscal year ending June 30, 1948, the full amount to which such districts are lawfully entitled.

I am in accord with the holding in the opinion of the Chief Justice as summarized near the close of his opinion in paragraphs designated First and Third, and that plaintiffs are not entitled to injunctive relief. Further a declaration of rights in ac-

cordance with the foregoing opinion may properly be made.

A decree should be entered in this Court in accordance herewith, without costs.

BOYLES, J., concurred with NORTH, J.